United States District Court
Southern District of Texas
**ENTERED**
September 17, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Curtis Donell Polk II, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:23-cv-02142 |
| Kilolo Kijakazi, Acting Commissioner of Social Security,[1] | § § § § § § | |
| *Defendant.* | § § | |

## MEMORANDUM AND ORDER

This is an appeal from an administrative ruling denying disability benefits. The case was transferred to the undersigned judge upon the parties' consent. Dkt. 3, 5. After carefully considering the parties' briefs (Dkt. 14, 15), the administrative record (Dkt. 4), and the applicable law, the Court denies Plaintiff Curtis Donell Polk II's motion for summary judgment (Dkt. 14) and affirms the Commissioner of Social Security's decision.

## Background

Plaintiff Curtis Polk was found to be disabled and eligible for Title XVI Supplemental Security Income Disabled Child benefits on November 3, 2008,

---

[1] Although Martin O'Malley became the Commissioner of Social Security on December 20, 2023, no request to substitute him as Defendant has been filed.

with an established onset date of March 24, 2008. R.151. This decision was based in part on a diagnosis of attention deficit hyperactivity disorder ("ADHD"). *See* R.81-82. Upon redetermining his disability at age 18, as required by law, the state agency found that Polk's disability ceased as of Sept. 24, 2019. R.93, 95, 104; *see* 20 C.F.R. § 416.987(a). This decision was reaffirmed by a disability hearing officer. R.148-55. Polk then requested a hearing before an administrative law judge ("ALJ"). R.158.

At the hearing, the ALJ reviewed Polk's medical history and asked him about his activities and mental limitations. R.45-70. In response to the ALJ's hypothetical question, a vocational expert ("VE") testified that there were significant numbers of jobs in the national economy that someone with Polk's limitations could perform. R.65-67.

In a subsequent opinion, the ALJ found that Polk's disability had ended on Sept. 24, 2019, and that Polk had not become disabled again since that date. R.122. Polk appealed that decision to the Appeals Council. R.193-94. The Appeals Council remanded the ALJ's decision for resolution of an unadjudicated claim of Child's Insurance Benefits under Polk's mother's record.[2] R.129. After remand, the ALJ held a second hearing to clear up the error. R.71-80.

---

[2] The Appeals Council noted a typographical error in the wage earner's Social Security Number that caused the claim to be omitted from the wage earner's query.

2

Following the second hearing, the ALJ issued another opinion finding that Polk had a severe impairment of major depressive disorder but determined that Polk's ADHD and other alleged impairments were not severe. R.19. After considering the Paragraph B and C criteria, the ALJ also found that Polk's mental impairments did not meet or medically equal a listed impairment. R.20-22.

The ALJ then assessed Polk's residual functional capacity ("RFC") based on objective medical evidence, medical opinions, and other evidence. R.22. The ALJ detailed numerous relevant reports and evaluated the persuasiveness of medical opinions regarding Polk's mental impairments. R.22-28. Based on that evaluation, the ALJ found that Polk can "perform a full range of work at all exertional levels," but with certain non-exertional limitations:

> [T]he claimant is limited to performing simple, repetitious work with one to two-step instructions in a routine work setting. The claimant is further limited to only occasional interaction with co-workers and supervisors. The claimant is limited to no contact with the public.

R.22.

After finding that Polk had no past relevant work, the ALJ relied on the RFC and testimony from a VE to determine that jobs exist in significant

---

The Council found that Polk's application for Child's Insurance Benefits was properly before the ALJ and needed to be considered. R.129 (citing 20 C.F.R. § 404.350); *see also* R.76 (oral hearing testimony discussing the filing error).

3

numbers in the national economy that Polk can perform, such as kitchen helper/dishwasher, produce sorter, or nut sorter. R.29-30, 65-69.

Based on these findings, the ALJ determined that Polk was not entitled to benefits. R.30. Polk appealed the ALJ's determination to the Social Security Appeals Council, which denied review. R.1-5. This appeal followed. Dkt. 1.

## **Legal Standard**

This Court reviews the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam) (internal quotation marks omitted).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*,

4

192 F.3d at 496 (internal quotation marks omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is … disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's RFC, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops …." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749,

5

753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54. The Commissioner fulfills this burden by identifying potential alternative employment that exists in significant numbers in the national economy. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a). The burden then "shifts back to the claimant to prove that he is unable to perform the alternate work." *Fraga*, 810 F.2d at 1302.

## II. Substantial evidence supports the ALJ's findings about Polk's mental impairments.

Polk challenges the ALJ's failure, at step two, to classify his ADHD as a severe impairment. Dkt. 14 at 6-9; *see* R.19 (ALJ's conclusion that Polk's asserted ADHD was not severe). Polk alleges that the ALJ erred in finding "little evidence of subjective complaints and no evidence of complications related to" his conditions. Dkt. 14 at 6, 9 (quoting R.19). Polk argues that the ALJ gave too little weight to the ADHD diagnoses and medical opinions of state agency psychologist Dr. Joel Forgus and two consultative examiners, Dr. Gayle Pitcher and Dr. Tracy Copp, which contradict the ALJ's findings. *See* Dkt. 14 at 6-9 (referencing R.646-60, 560-64, 640-45).

The Commissioner responds that the ALJ properly concluded that Polk's ADHD was not a severe impairment by considering not only the Pitcher and

6

Copp opinions, but also Polk's primary care treatment records and Polk's own statements about his daily activities. *See* Dkt. 15 at 2-3.

Initially, Polk notes his original disability finding of listing-level ADHD. Dkt. 14 at 6 (referencing R.81). Similarly, Polk emphasizes that Dr. Forgus's diagnosis "includes ADHD," Dkt. 14 at 6 (referencing R.655), and that Dr. Pitcher's diagnosis includes depression "***and*** ADHD ...." Dkt. 14 at 7 (referencing R.564); *see also* R.642 (similar diagnosis by Dr. Copp).

But a prior disability finding is not dispositive at the redetermination stage. "The regulations provide that the claimant may be found not now disabled even though he or she was previously found disabled." *Parks v. U.S. Comm'r of Soc. Sec.*, 2012 WL 2862692, at *6 n.7 (W.D. La. June 11, 2012) (citing 20 C.F.R. §§ 416.987(a)(2), 404.1587(a)(2)), *adopted by* 2012 WL 2862690 (W.D. La. July 11, 2012). Polk's prior receipt of benefits due to ADHD did not require the ALJ to reach an analogous conclusion when redetermining Polk's disability status.

Similarly, mere diagnosis of a condition does not necessarily mean the claimant has a severe impairment or disability. "The ALJ was not required to find that [Polk's ADHD] was a severe impairment for purposes of this disability determination simply because [a doctor] diagnosed him ...." *See Graham v. Barnhart*, 2007 WL 496852, at *2 (W.D. Tex. Feb. 7, 2007) (substantial evidence supported the ALJ's determination of a non-severe impairment

7

despite a doctor's contrary diagnosis); *see also, e.g.*, *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se."); *Galvan v. Berryhill*, 2018 WL 993882, at *5-6 (S.D. Tex. Feb. 20, 2018) (noting that the ALJ accepted a diagnosis without finding the impairment to be severe); *King v. Barnhart*, 372 F. Supp. 2d 932, 946 (S.D. Tex. 2005) ("[T]he mere fact that a condition is identified or diagnosed does not establish a disability …."). The proper focus in assessing a claim of disability is the degree of functional impairment. *See, e.g.*, *King*, 372 F. Supp. 2d at 946 (citing *Hames*, 707 F.2d at 165). As a result, the relevant question is whether substantial evidence contained in Polk's medical records supports the ALJ's conclusion that Polk's ADHD is non-severe.

Whether a mental impairment qualifies as "severe" depends on its impact on four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; *id.* §§ 404.1520a(c)(3), 416.920a(c)(3). If a claimant's limitations in any given area are no more than mild, the ALJ will generally conclude that an impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1) (internal citation omitted).

8

The ALJ found no more than a moderate limitation in all four functional areas after carefully considering the medical opinions of Drs. Pitcher and Copp, along with Polk's treating physicians and his own statements. R.20-21. In each of the first three categories, the ALJ noted "inconsistencies" between the Pitcher and Copp reports, on the one hand, and Polk's primary care pediatricians and his own statements, on the other. R.20-21.

For example, as to understanding, remembering, or applying information, while Dr. Copp noted Polk's failure to pass a short-term memory test, R.20 (referencing R.642), Dr. Pitcher found Polk's memory to be "intact," R.20 (referencing R.563). Although Dr. Copp found Polk unable to perform a simple subtraction problem or spell "world" forward and backward, Polk graduated from high school and attended college and had been able to answer similar questions in the past. R.20 (citing R.642). Finally, the ALJ noted that Polk's therapy treatment records "routinely indicated no deficits in this area." *Id.* (citing R.537-49); *see also* R.780-87.

The ALJ flagged further inconsistencies in the area of interacting with others. R.20-21. Drs. Copp and Pitcher reported Polk's subjective claims of having no friends. R.20-21, 561, 641. But Polk's therapy records routinely indicated no deficits in this area. R.21, 537-49, 780-87. To the contrary, the ALJ noted a record indicating that Polk spent time with friends. R.21, 782.

9

And in concentrating, persisting, or maintaining pace, the ALJ identified yet more inconsistencies in the record. R.21. While Dr. Pitcher's mental status examination found Polk's attention and concentration "deficient," Dr. Copp reported that Polk was able to stay on task throughout the examination. R.21, 563, 642. Moreover, the ALJ noted that Polk's history of therapy treatments shows no deficits in this area. R.21, 537-49, 780-87.[3]

In short, the ALJ considered and resolved conflicting evidence when determining that Polk's ADHD was not a severe impairment. And the ALJ applied the correct legal standards when doing so. There is no basis for disturbing the ALJ's conclusion. *See, e.g.*, *Sorenson v. Saul*, 2021 WL 5155681, at *5 (S.D. Tex. June 4, 2021) (upholding ALJ's finding that claimant's depression and anxiety were non-severe, emphasizing "it is the ALJ's duty to evaluate credibility and resolve conflicts in the evidence"), *adopted by* 2021 WL 5155689 (S.D. Tex. July 7, 2021).

### III. Substantial evidence supports the ALJ's formulation of the RFC.

Polk argues that the ALJ erred by formulating an RFC that does not account for his concentration deficits, limited ability to remain on task, and

---

[3] The ALJ generally accepted Dr. Pitcher's and Dr. Copp's findings in the fourth area of Paragraph B criteria, even though therapy treatments routinely indicated no deficits. R.21. The RFC addressed this limitation with "restricted interactions with others." R.21-22.

10

likely need for periodic breaks or reminders to stay on task.[4] Dkt. 14 at 10-11. He contends that Dr. Copp's and Dr. Pitcher's medical opinions support limitations that were excluded from the RFC. Dkt. 14 at 11-12. The Commissioner responds that the ALJ adequately considered Dr. Pitcher's and Dr. Copp's findings, as well as Dr. Moffitt's primary care treatment records, in formulating the RFC. Dkt. 15 at 4-5.

### A. Standard for the RFC

An applicant's RFC is defined as "the most [an applicant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ is responsible for determining an applicant's residual functional capacity." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546); *see also* 20 C.F.R. § 404.1527(d)(2) (the Commissioner of the Social Security Administration is reserved the final responsibility for opinions, including the RFC). When determining the RFC, the ALJ examines all medical evidence in the record. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); 20 C.F.R.

---

[4] Polk also contends that the ALJ erred by failing to find that Polk can not only obtain but also sustain employment. Dkt. 14 at 8-9, 11-12. But the Commissioner correctly maintains that the ALJ was not required to include a separate finding that Polk can maintain a job on a sustained basis. *See* Dkt. 15 at 6; *Castillo v. Barnhart*, 151 F. App'x 334, 335-36 (5th Cir. 2005) (citing *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003); *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005)). Accordingly, Polk's contention adds nothing to his challenge to the RFC itself.

11

§ 404.1545(a)(1) (RFC is based on "all the relevant evidence in [the claimant's] case record").

When forming the RFC, the ALJ must "consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (citing 20 C.F.R. § 404.1523). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Wells v. Kijakazi*, 2022 WL 17548603, at *3 (S.D. Tex. Sept. 28, 2022) (quoting SSR 96-8p, 1996 WL 374184, at *5). Nevertheless, "consideration does not require incorporation." *Mendoza v. Saul*, 2021 WL 4555812, at *7 (S.D. Tex. July 21, 2021), *adopted by* 2021 WL 4555197 (S.D. Tex. Oct. 5, 2021). "The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported by the record." *Liguez v. Kijakazi*, 2021 WL 4943321, at *8 (S.D. Tex. Aug. 11, 2021) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)), *adopted by* 2021 WL 4941997 (S.D. Tex. Oct. 22, 2021).

> **B. The ALJ properly considered and weighed the evidence when forming the RFC.**

In this case, the ALJ stated that "the limiting effects of all the claimant's impairments, *even those that were not severe*, were considered in determining

12

the claimant's residual functional capacity …." R.19-20 (emphasis added). Indeed, the ALJ's RFC analysis included an even more extensive review of the record than her step-two analysis, above. *See supra* Part II; *compare* R.22-28 (RFC analysis), *with* R.20-21 (addressing impact on functional areas).

When challenging the RFC, Polk relies entirely on the opinions of Drs. Copp and Pitcher, while ignoring extensive countervailing evidence. *See* Dkt. 14 at 10-13. Most notably, the ALJ considered Polk's extensive primary care treatment records. During Polk's primary care visits spanning 2018-2022, Polk sought treatment repeatedly for depression, which was consistently diagnosed by his primary pediatricians—but not ADHD or its symptoms. R. 668-731, 780-816. Dr. Olivia Moffitt evaluated Polk as having age-appropriate attention span and concentration, repeatedly finding that he was "not hyperactive." R.794, 801, 802. As the ALJ noted, Polk's therapists, Ms. Joanna Pule and Mr. Eric McClure, treated him repeatedly for depression but routinely found his mental status otherwise normal, including attention span and concentration. R.26-7, 538-49, 780-87.

Those records from Polk's treating physicians led the ALJ to discount the opinions of Drs. Forgus, Copp, and Pitcher. R.24-28. Notably, Dr. Copp's and Dr. Pitcher's diagnoses of Polk with ADHD were merely "provisional." R.564, 642. And although Dr. Copp's and Dr. Pitcher's opinions were generally consistent with each other, as Polk contends, Dkt. 14 at 7, they did not comport

13

with the opinions of Polk's primary care providers spanning several years. *See* R.26 (referencing UT Physicians examination records at 675-79, 668-73, 784-87, 780-83, 789-96).

After reviewing Dr. Copp's report, the ALJ found it only somewhat persuasive. R.25, 28. Dr. Copp observed that Polk was "able to stay on task throughout the examination." R.25; *see* R.642. Dr. Copp noted moderate impairments in Polk's ability to sustain concentration and persist in work-related activity at a reasonable pace, as well as his ability to maintain social interaction and handle pressures of a competitive work setting. R.28, 643. But as the ALJ emphasized, Dr. Copp's opinion contained little information about the nature and severity of Polk's limitations. *See* R.28. In addition, the ALJ found Dr. Copp's ADHD diagnosis unpersuasive because it was never diagnosed or treated by Polk's primary care physicians since he turned 18. R.26 (referencing UT Physicians examination records); *see also supra* Part II.

As for Dr. Pitcher's evaluation, the ALJ found it only "somewhat persuasive." R.27. Dr. Pitcher acknowledged that her diagnostic impression was "based primarily on self-reported information and some direct testing without the benefit of objective corroborating information." R.564. Although Dr. Pitcher's report indicated limitations in Polk's social interaction and concentration, it "provided little insight into the nature and severity of [Polk's] limitations." R.27-28, 564. The ALJ acknowledged Dr. Pitcher's observations

14

about Polk's deficient attention and concentration but noted that Dr. Pitcher offered few specifics on the nature of the deficiency. R.28, 563.

The ALJ found Dr. Forgus's opinion only somewhat persuasive because it failed to incorporate findings from Polk's psychotherapy treatment records, his primary pediatric care, and his subjective reports. R.27, 646-60. It did not adequately consider the specifics of Polk's mental status examination by the consultative examiner. *Id.* In addition, as an opinion presented primarily in checklist form, Dr. Forgus's assessment merits less weight. *See, e.g., L. v. Kijakazi*, 2022 WL 4543200, at *9 (S.D. Tex. Sept. 28, 2022) ("The use of such checklist forms is generally viewed with disfavor among the federal courts of appeals and district courts within the Fifth Circuit when the forms are not adequately supported by any narrative citations to clinical findings."); *see also Rollins v. Astrue*, 464 F. App'x 353, 357 n.5 (5th Cir. 2012) (ALJ may give less weight to check-the-box forms without additional explanations).

Polk objects to the ALJ's use of Polk's own testimony to bolster the ALJ's persuasiveness determinations. *See* Dkt. 14 at 8. When weighing Dr. Pitcher's and Dr. Copp's opinions, the ALJ noted Polk's testimony about selling food to classmates and using the earnings to buy video games, finding it suggested an entrepreneurial spirit and ability to use math skills. R.23, 28 (citing hearing testimony at R.63-64). The ALJ also considered Polk's ability to conduct certain daily activities as evidence of his ability to sustain concentration and

15

persist in work related activity. R.23, 28 (referencing, e.g., R.561-62, 642, 669, 681, 792). Nothing precluded the ALJ from considering Polk's own testimony, as nonmedical evidence, when evaluating the persuasiveness of other medical opinions. *See* 20 C.F.R. § 404.1520c(c)(2) (explaining that consistency with *nonmedical* and other medical sources affects persuasiveness of a medical opinion). Moreover, as already addressed, the ALJ noted ample other evidence undermining Dr. Copp's and Dr. Pitcher's opinions.

Notably, too, the ALJ found that Polk's symptoms improved with medication.[5] R.24, 26. She cited evidence from Polk's therapy treatment in 2019 and primary care treatment in 2022 that taking an antidepressant improved his drive and concentration. R.24, 26, 547, 791. Such an impairment "that can be reasonably remedied or controlled by medication or treatment is not disabling and does not affect RFC." *Willis v. Berryhill*, 2017 WL 1153956, at \*17 (S.D. Tex. Mar. 28, 2017) (citing *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1998) (per curiam)); *see also* 20 C.F.R. §§ 404.1530, 416.930.

---

[5] Polk argues that the ALJ should have analyzed Polk's failure to follow prescribed treatment under Social Security Ruling 18-3p. *See* Dkt. 14 at 13. But as the Commissioner correctly asserts, the ALJ only analyzes the failure to follow prescribed treatment *after* finding that an individual is entitled to benefits. *See* Dkt. 15 at 6-7; SSR 18-3p, 2018 WL 4945641 at \*3 ("We will not determine whether an individual failed to follow prescribed treatment if we find the individual is not disabled … or otherwise not entitled to or eligible for benefits under … the Act."). Having determined that Polk was not disabled, the ALJ was foreclosed from evaluating Polk's non-compliance with treatment. R.17-30; *see supra* Part II.

16

But even after finding Dr. Pitcher's and Dr. Copp's opinions only somewhat persuasive, the ALJ nonetheless took them into account when forming the RFC. This is evident from the decision limiting Polk to unskilled work, restricted interactions with others, and simple, repetitious work. *See* R.28. Polk's objections to the ALJ's analysis and conclusions invite this Court to reweigh the evidence and substitute its judgment for the ALJ's. That is impermissible. *See Brian K. L. v. Comm'r of Soc. Sec.*, 2022 WL 902641, at *5 (S.D. Tex. Mar. 28, 2022) (ALJ was "entitled to evaluate and determine the weight and persuasiveness of the evidence"). Accordingly, substantial evidence supports the RFC.

### IV. The ALJ did not err when posing a hypothetical to the VE that tracked limitations ultimately incorporated in the RFC.

The foregoing conclusions defeat Polk's challenge to the ALJ's questioning of the VE about the jobs that Polk could perform. *See* Dkt. 14 at 15. According to Polk, the VE responded to an incomplete hypothetical because it excluded some of Polk's limitations. *See id.*; R.65-67. But this argument assumes that Polk's memory, attention, and concentration impairments were greater than what the ALJ ultimately concluded.

As explained above, substantial evidence supported the ALJ's decision to exclude further limitations from the RFC. *See supra* Part III. And the ALJ's questions posed to the VE tracked the RFC's limitations. *Compare* R.22 (RFC),

17

*with* R.66 (ALJ's hypothetical to VE at hearing). Accordingly, the ALJ properly adopted the VE's testimony that Polk could perform several unskilled jobs available in the national economy, namely as a kitchen helper, dishwasher, produce sorter, or nut sorter. *See* R.29-30; *see also, e.g., Baquer v. O'Malley*, 2024 WL 1201623 (S.D. Tex. Mar. 20, 2024) (finding no error in the ALJ's hypothetical question to VE because substantial evidence supported the underlying RFC findings) (citing *Lafleur v. Colvin*, 540 F. App'x 263, 267 (5th Cir. 2013) (per curiam)). The ALJ's denial of benefits is affirmed.

## Conclusion

For the foregoing reasons, it is **ORDERED** that Plaintiff Curtis Polk's Motion for Summary Judgment (Dkt. 14) is **DENIED**. It is further **ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Signed on September 17, 2024, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge